WILLIAM H. COLLINS *et al.* Appellees, *vs.* MABEL PHILLIPS *et al.*—(WILLIAM E. PERKINS, Appellant.)

*Opinion filed June 18, 1913—Rehearing denied October 16, 1913.*

1. ANTE-NUPTIAL CONTRACTS—*rules of construction applicable to other contracts apply to ante-nuptial contracts.* The rules of construction governing other contracts apply in construing ante-nuptial contracts, and the entire instrument should be considered, together with its general scope and purpose, and effect should be given to the intention of the parties as shown by the language used.

2. SAME—*circumstances surrounding the parties may be considered.* The conditions and circumstances surrounding the parties at the time the agreement was made, so far as they are shown by the record, are proper matters to be considered in construing an ante-nuptial contract.

3. SAME—*parties may release rights in property conveyed or devised without releasing right to inherit.* The parties to an ante-nuptial contract may, by the use of proper language to that effect, release their rights with respect to the separate property of the other, conveyed during life or devised by will, without releasing the right to inherit property not so conveyed or devised.

4. SAME—*release of right to inherit need not be stated in express terms.* If the language used in an ante-nuptial contract is broad enough to include a release of the right to inherit, and appears to have been intended to do so, it will be given that effect,

the same as though there were an express statement in the contract releasing such right.

5. SAME—*when ante-nuptial contract releases husband's right to inherit.* An ante-nuptial contract by which the parties agree. in consideration of the marriage, that neither shall, by reason of such marriage, "take any right, title or interest in or to the property of the other, either during their lives *nor after the death of either,*" and that the husband will never, at any time, claim any right, title or interest in or to any property owned by the wife, "either during her lifetime or upon her death," releases all the husband's rights in the wife's property after her death, including his right to inherit, and not merely to such of it as she conveys in her lifetime or devises by will.

APPEAL from the Circuit Court of Lee county; the Hon. RICHARD S. FARRAND, Judge, presiding.

BROWN, HAY & HAND, and JOHN T. CREIGHTON, for appellant.

HARDIN W. MASTERS, and THOMAS D. MASTERS, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellees filed their bill in the circuit court of Lee county for the partition of 640 acres of land described in the bill. The bill alleges that Caroline Bevans Perkins died intestate October 11, 1912, seized and possessed of the land; that she left a husband, William E. Perkins, but no child or descendants of a child, surviving her; that she left complainants, William H. Collins and Leander H. Collins, her brothers, Minnie Beadle, her sister, and Edwin A. Collins and Flora Scully, a son and daughter, respectively, of a deceased brother and a deceased sister of Caroline Bevans Perkins, also defendants Mabel Phillips, Louise Ferguson and Percy Collins, only children of a deceased brother, as her only heirs-at-law. The bill alleges that Caroline Bevans and William E. Perkins on the 29th of March, 1912, con-

templating marriage with each other, entered into an ante-nuptial contract in writing, by the terms of which William E. Perkins released and divested himself of all right, title or interest in the property, real and personal, of Caroline Bevans that he might otherwise be entitled to by reason of the marriage, and he therefore took no title or interest in his wife's real estate upon her death, either as dower or as an heir, but that the same descended to and vested in complainants and defendants, who are brothers, sister, nephews and nieces of the said Caroline Bevans Perkins, as her next of kin and only heirs. The ante-nuptial contract was set out in the bill and is as follows:

"This indenture witnesseth, that William E. Perkins, of McHenry, North Dakota, of the one part, and Caroline L. Bevans, of Springfield, Illinois, of the other part, in consideration of a marriage about to be entered into by and between the said parties, it is mutually agreed and understood that neither of the above named parties, by reason of said contemplated marriage hereafter to be consummated, shall have or take any right, title or interest in or to the property of the other, either during their lives nor after the death of either.

"That the said first party, William E. Perkins, is a widower, with living children by a former wife, and that upon his part he covenants and agrees, in consideration that the said Caroline L. Bevans will become his wife, that he will never at any time claim any right, title or interest in or to any property, of any kind or character, which is now owned by the second party, the said Caroline L. Bevans, either during her lifetime or upon her death, should such death occur before his, but will, in her behalf and for the mutual benefit of each, control and manage her real estate and property for the best interests of all concerned, but that she, Caroline L. Bevans, shall retain free and clear of any inchoate right of dower to him by reason of his becoming her husband, with full power and authority to sell, convey or dispose of, by will or otherwise, as she may see proper.

"And in consideration that William E. Perkins shall marry her, the said Caroline L. Bevans hereby covenants and agrees to and with the said William E. Perkins that she will not, either during the lifetime of the said William E. Perkins nor after his decease, in case his death should occur before hers, take, claim, demand or receive any right of dower in any property which the said William E. Perkins might own at the time of his death, nor will she

demand, take or receive any widow's award or specific allowance as provided for by the statutes of the State of Illinois or of any other State in which they might be domiciled at the time of his death, but she hereby expressly and forever renounces and waives all of such rights which might or otherwise would be coming to her under and by virtue of the law of Illinois or that of any other jurisdiction. Meaning and intending thereby that so far as the property rights of each of the parties to this contract and contemplated marriage are concerned, shall be and remain absolutely and forever as they are now under the laws of this or any other State, that is, separate and distinct, just as though such marriage should not take place, excepting only the legal and reciprocal duties and obligations imposed by law, the one to the other, by assuming such relation as man and wife. The said Caroline L. Bevans being a widow, and not having any living child or children nor descendant of such child or children.

"This contract as an ante-nuptial agreement, and being fully understood, in fact and in law, by both the parties thereto, is made, signed and executed and in duplicate, a copy being retained by each of the parties thereto.

"Witness our hands and seals this 29th day of March, A. D. 1912, at the city of Springfield, State of Illinois.

WILLIAM E. PERKINS, (Seal.)
CAROLINE L. BEVANS. (Seal.)"

Defendant William E. Perkins, for the purpose of raising the question of the correctness of the construction of the ante-nuptial agreement contended for by complainants, demurred to the bill. The chancellor overruled the demurrer, and the defendant William E. Perkins elected to stand by his demurrer and refused to answer. The cause was heard and a decree entered for partition, as prayed. The decree finds that by reason of the ante-nuptial agreement William E. Perkins succeeded to no interest in or title to any of his wife's estate, either as surviving husband, heir or otherwise, and he has prosecuted this appeal from that decree.

The appeal presents for consideration the effect of the ante-nuptial contract upon the rights of appellant, William E. Perkins. He contends that the purpose and intention of the parties in entering into the agreement were to relieve each other of the disabilities incident to coverture in the

control and disposition of their separate property by deed or by will during marriage; that the only right released by the husband in his wife's separate property was his right, as husband, to claim dower or other interest in lands she might convey in her lifetime or that she might dispose of by will, and that under the proper meaning and construction of the ante-nuptial agreement the husband did not release his expectancy or right to take as heir. It is also contended that the complainant and defendant heirs were not intended to be benefited by the agreement; that it was made for the benefit of the grantees and devisees of Caroline Bevans Perkins; that it cannot be invoked by her heirs, and as against them William E. Perkins is, in addition to his right to one-half the land as heir, entitled to dower in the other half.

It is not claimed by appellant that he could not, by ante-nuptial agreement, release and divest himself of any right to inherit from his wife or divest himself of any right to claim dower as against her collateral heirs, but it is contended that he did neither by the agreement set up in the bill in this case. There can be no question that he might have entered into an agreement which would authorize his wife, during the marriage, to convey her separate property without his joining her in the conveyance, and that would authorize her to dispose of her land by will and bar him from claiming any interest in the land in case he survived her, as against her grantee or devisee, and at the same time not release or bar his right to inherit from her, as heir, property not conveyed or devised during her life. The decision of the case therefore depends upon the meaning and intention of the parties to be gathered from the language used by them in the instrument.

Appellant relies on *Stewart* v. *Stewart,* 7 Johns. Ch. 229, (asserted to be the leading case in this country upon the question,) and cases decided by the courts of Virginia, West Virginia, Kentucky, Kansas, Pennsylvania and Ohio. In

the *Stewart case* the ante-nuptial agreement gave the wife control over certain of her separate property and the husband released all his marital rights therein, but there was no relinquishment of the husband's right in the property after his wife's death. Chancellor Kent held that there was nothing in the instrument that barred the husband, in default of an appointment by the wife, to claim her personal estate remaining undisposed of at her death. It was also held that where it is intended by such an agreement to exclude the husband's right to his wife's personal property in the event of his surviving her it should be so expressed in the instrument. That case has been cited in a number of other cases decided by the courts of other States, including this court, and so far as we can discover its soundness has never been questioned. As said by this court in *Dunlop* v. *Lamb,* 182 Ill. 319, the court construed the agreement to do no more than give the wife the power of appointment over her property during her lifetime. If that is the proper construction to place upon the contract in this case, as appellant contends, then we should, without question, follow *Stewart* v. *Stewart,* but we would not be justified in following that case, and others of like character cited by appellant, if it was plainly meant, as we think it was, that appellant intended to relinquish all right to claim any interest, of any kind or character, in his wife's property after her death. The distinction between this contract and the contracts construed in the cases cited by appellant is, that there was no provision in those contracts showing that the parties intended the husband should release any rights he would otherwise have in his wife's property after her death. They gave the wife control of her separate property during her life and with power of appointment without interference from the husband, but they did not purport, as the contract here involved does, as we understand it, to relinquish and bar any right or interest the husband would have in the wife's property after her death. The substance of the most

material parts of the contract is, that the parties, in consideration of the marriage about to be entered into between them, agreed that neither should, by reason of the marriage, "take any right, title or interest in or to the property of the other, either during their lives nor after the death of either." On his part appellant covenanted and agreed that in consideration of Caroline Bevans becoming his wife he would "never at any time claim any right, title or interest in or to any property" owned by Caroline Bevans, "either during her lifetime or upon her death," in case he survived her, and that she should retain her property free and clear of any inchoate right of dower in her husband, with full power and authority to convey or dispose of the same by will, as she might see proper. In the paragraph containing the covenants and agreement of Caroline Bevans it is agreed that the meaning and intention of the parties is that the property rights of each of the parties shall be and remain absolutely and forever as they now are, separate and distinct, "just as though such marriage should not take place." There is no express statement in the agreement that appellant released the right to inherit from his wife, but this would not prevent its being given that effect if the language used shows it was understood and intended by the parties to release such right.

The same rules of law governing the construction of other contracts are applicable to the construction of ante-nuptial agreements. The entire instrument should be considered together with its general scope and purpose and effect be given to the intention of the parties as shown by the language used. The conditions and circumstances surrounding the parties at the time the agreement was made, so far as they are shown by the record, are also proper matters to be considered. The record here shows that at the time this contract was entered into Caroline Bevans was a childless widow, sixty-two years old. That there was no reasonable probability of there ever being any issue from

said marriage was known to the parties, and, we are warranted in assuming, was in contemplation in their minds when the agreement was made. They knew if appellant survived his wife and she left no children he would be entitled to one-half the land she died seized of, unless that right was relinquished. It seems to us that the plain meaning and intention of the agreement were that each of the parties released every right the law would otherwise give either in the property of the other at death. Appellant agreed that he was to have no interest in his wife's property during her life or after her death; that he would never claim any right, title or interest in her property during her lifetime or after her death. This language seems entirely too broad and sweeping to be construed to mean that appellant intended only to release to the grantee or devisee of his wife his right in any land that his wife might during her life convey by deed or devise by will. Instead of saying, as contended by appellant, that if it was intended to release the husband's right to inherit the contract should have said so, we think it more reasonable to say that if appellant intended to reserve and retain his right to inherit he should not have used the sweeping terms releasing any,—in this connection meaning all,—right to any interest in any property of his wife, either during her life or after her death. It was not essential that the instrument should say, in express terms, that he released his right to inherit. If the language used was broad enough to include that right and appears to have been intended to do so, it will as readily be given that effect as if it in express terms relinquished the right to inherit from the wife.

*Crum* v. *Sawyer,* 132 Ill. 443, involved the construction of a post-nuptial agreement, and, among other things, its effect upon the surviving husband's right of inheritance. Some of the features of that case are similar to those of this case, and while there is some difference in the language of the two contracts, some questions decided in that

case are similar to questions raised in this case. In that
case the husband, at the time of the marriage, was a wid-
ower with children by a former marriage. The woman was
a childless widow, fifty-two years old. After their mar-
riage the wife agreed to, and did, pay debts of her husband
amounting to nearly $32,000, in consideration of which he,
by the post-nuptial agreement, released to the wife, her
heirs, executors, administrators, devisees and assigns, "all
his right and interest, of every kind and nature whatsoever,
and especially his contingent right of dower and homestead,
in all lands of which the party of the second part [his wife]
is now seized or of which she may hereafter become seized."
The husband further covenanted and agreed that in the
event he survived his wife he would not sue for or claim
any right of dower or other interest in any real estate of
which his wife died seized. One of the questions raised
and decided in that case was whether the contract was good
as a release of the husband's right to inherit as heir, be-
cause that right was a mere naked possibility or expectancy,
and was not, at the time the agreement was made, a vested
right, like the inchoate right of dower. The court held
the expectancy of an heir, apparent or presumptive, is a
proper subject of contract, assignment and release by par-
ties capable of contracting with each other. Another point
made in the case was, that whether the contract was to be
regarded as made for the benefit of the wife herself or for
the benefit of her heirs, it must be deemed to inure as com-
pletely to the benefit of the husband as to the other heirs,
and the husband, as one of the heirs, would be entitled to
the benefits of the contract. The court held against this
contention, and said: "The true view would seem to be,
that a release by an heir of his expectancy operates, not as
a transfer or conveyance to either the ancestor or the other
heirs of the estate which would descend to him upon the
death of the ancestor, but rather as an extinguishment of
his right to take any estate by descent. It obliterates the

right to inherit to an extent substantially equivalent to its obliteration by the death of an heir expectant without issue before the death of the ancestor. The other heirs are thereby placed in the same position in which they would have been if such right had never existed, and they therefore inherit the entire estate, not upon the theory of an assignment to them of the estate in expectancy of the heir executing the release, but upon the theory of an extinguishment or obliteration of that estate." It was also contended in that case that, properly construed, the release extended only to the husband's right of dower and homestead and did not affect his right to inherit as heir of his wife. The court held the language used was comprehensive enough to include the release of the husband's expectancy as heir, and that it was intended to have that effect.

In *Wetsel* v. *Firebaugh,* 258 Ill. 404, we held the antenuptial agreement there involved, although it was not so stated in express terms, operated to release the husband's expectancy as heir of his wife.

In *Dunlop* v. *Lamb, supra,* Dunlop, in consideration of his intended marriage with Mrs. Story, agreed that she should, after the marriage, have the enjoyment, control and right to dispose of her separate property the same as if she were unmarried. He further agreed that he would not at any time claim any right in her property as widower, heir or next of kin, and upon request would execute any deed thought necessary by counsel to extinguish any right of dower, homestead or of inheritance in his wife's property. One of the contentions in the case was, that Dunlop did not, under a proper construction of the agreement, release his interest in his wife's estate which might remain intestate upon her death; that it only gave her the right to control, manage and dispose of her separate property during the marriage relation, free from any interference on his part. The court held to the contrary, and while the contract con-

tained the terms "heir" and "inheritance," the opinion is an instructive one upon the question of the construction of such agreements.

*Luttrell* v. *Boggs,* 168 Ill. 361, involved the construction of a separation agreement between husband and wife. By the agreement the husband released to his wife all his interest, right and title to any real estate or personal property she was possessed of at the time of the marriage. The wife died leaving children by a former marriage, and her surviving husband brought suit for the assignment of dower in her lands. The court held he was not entitled to dower in real estate she died seized of; that by the agreement he released all right, title and interest in her property.

In *Talbot* v. *Calvert,* 24 Pa. St. 327, cited by appellant, the court said: "Where it [the contract] indicates, in terms tolerably clear, that the husband intended to relinquish all the rights which he had or could have in his wife's property, not only during but after the coverture, then it descends to her next of kin, and they take it under the intestate laws just as if she had never been married."

*Strawbe's Appeal,* 66 Conn. 127, *Ward* v. *Thompson,* 6 G. & J. 349, and *Buffington* v. *Buffington,* 161 Ind. 200, (51 N. E. Rep. 328,) sustain the construction we have placed upon the agreement involved in this case.

The contention that the agreement was not made for the benefit of the next of kin of the deceased wife, and therefore does not bar appellant's right of dower, we think is fully answered by the previous decisions of this court cited in this opinion.

In our judgment the decree of the circuit court was correct, and it is affirmed.                 *Decree affirmed.*