_In re_ ESTATE OF THOMAS ROBERT HOPKINS, Deceased (Nancy L. Hopkins, Petitioner-Appellant, v. Terri-Beth Brown, Independent Ex'r of the Estate of Thomas Robert Hopkins, Deceased, Respondent-Appellee).

Second District   No. 2—87—0566

Opinion filed February 26, 1988.

Joel S. Siegel and Gregory M. Kruzel, both of Arvey, Hodes, Costello & Burman, of Chicago, for appellant.

John Kevin Kneafsey, of John Kevin Kneafsey, P.C., of Chicago, for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Petitioner, Nancy L. Hopkins, filed a petition in the circuit court to set aside an antenuptial agreement between her and her deceased husband, Thomas Hopkins (Thomas). Terri-Beth Brown, executor of the estate of Thomas Hopkins, filed a motion to dismiss the petition.

The court granted Brown's motion, and petitioner appeals, contending that her petition set forth sufficient facts to state a cause of action to void the agreement.

Petitioner and the decedent married on April 17, 1982. The day before, April 16, they had signed an antenuptial agreement which provided that each party would retain his or her separate property and would not have any rights to the estate or property of the other when the marriage was terminated by death or legal proceedings. Schedules of each party's separate property were attached to the agreement, although the agreement provided that these schedules were not exhaustive and that "while the property referred to herein includes the scheduled property, it is not limited to such scheduled property." According to the allegations of the petition, the agreement was prepared by Thomas' attorney, and petitioner first saw the agreement when she was asked to sign it on the evening of April 16, in the attorney's office. Petitioner did not have an attorney with her to review the agreement and had not been advised to have one present. The petition alleges, and the estate does not dispute, that the schedule of Thomas' assets failed to list two assets: a United States Savings Bond worth approximately $19,000 and a Borg-Warner corporate pension plan which paid a monthly benefit of $463.

Thomas died November 30, 1985. Petitioner filed her petition to set aside the agreement on March 11, 1987, claiming that she did not understand the nature and effect of the agreement at the time she signed it. She alleged that she executed the agreement in reliance on representations of Thomas and his attorney without fully understanding her rights and obligations. On March 20, 1987, Brown filed a motion to dismiss the petition. The motion did not specify whether it was being brought pursuant to section 2—615 or section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619). Although the motion contained extraneous material which was not directed to the four corners of the petition, the main thrust of the motion was to challenge the legal sufficiency of the petition. The court decided the motion as if it had been brought pursuant to section 2—615, and, on appeal, both parties treat the motion as having been brought under that section. Thus we consider the parties' contentions pursuant to the standards applicable to section 2—615 motions.

Before undertaking a discussion of these contentions, however, we consider the estate's argument that we do not have jurisdiction of this appeal because the order appealed from was not a final order. The estate points out that a complaint should be dismissed with prejudice

only if it is obvious that, even after amendment, it cannot state a cause of action. (See *Fanning v. Lemay* (1966), 78 Ill. App. 2d 166, 172, 222 N.E.2d 815, *rev'd in part on other grounds* (1967), 38 Ill. 2d 209, 230 N.E.2d 182.) It then reasons that, since petitioner never had an opportunity to amend, the court's order dismissing the petition must have been without prejudice and is therefore not a final, appealable order. We disagree.

■■■ Generally an appellate court can review only final orders. (*Branch v. European Autohaus, Ltd.* (1981), 97 Ill. App. 3d 949, 951, 424 N.E.2d 6.) The appealability of an order is determined by its substance rather than its form. (*Branch*, 97 Ill. App. 3d at 951-52.) Where a dismissal is based upon a determination that the complaint is insufficient to state a cause of action as a matter of law, rather than upon technical defects in the complaint, then the order is final and appealable by its very nature. A general dismissal with no right to amend, and no request for leave to amend, is a final, appealable order. (*Branch*, 97 Ill. App. 3d at 952; *Bates v. Ulrich* (1976), 38 Ill. App. 3d 203, 204, 347 N.E.2d 286. But see *Davies v. Martel Laboratory Services, Inc.* (1987), 157 Ill. App. 3d 686, 510 N.E.2d 1119 (Sullivan, J., dissenting).) The view of the majority in *Davies* appears to require the plaintiff to state specifically in the trial court his intention to stand on his complaint. As the dissent pointed out, however, such an interpretation is inconsistent with prior cases, such as *Bates v. Ulrich* (1976), 38 Ill. App. 3d 203, 347 N.E.2d 286, which simply held that a general dismissal which was not followed by a request to amend was a final, appealable order and did not require a specific declaration by the plaintiff that he wished to stand on the complaint. We decline to follow what we perceive to be the majority view in *Davies* and, instead, follow the holdings of *Branch* and *Bates*. Nor is an order deprived of finality merely because it does not include the words "with prejudice." *Bond v. Dunmire* (1984), 129 Ill. App. 3d 796, 801, 473 N.E.2d 78.

In *Fanning*, the appellate court stated that a complaint should be dismissed with prejudice "only if it is apparent that even after amendment, *if leave to amend is sought*, that no cause of action can be stated." (Emphasis added.) (*Fanning*, 78 Ill. App. 2d at 172.) In the instant case, it is apparent that petitioner never requested leave to amend in the trial court. Even in this court, she does not ask for a remand to permit amendment. In *Jarvis v. Herrin City Park District* (1972), 6 Ill. App. 3d 516, 285 N.E.2d 564, the court held that where the plaintiff "apparently" had elected to stand on her complaint, she was entitled to have its legal sufficiency reviewed on appeal. (*Jarvis*,

6 Ill. App. 3d at 523; see also *People ex rel. Jones v. Leviton* (1945), 327 Ill. App. 309, 314-15, 64 N.E.2d 195; *cf. Goldstein v. Lustig* (1987), 154 Ill. App. 3d 595, 603, 507 N.E.2d 164.) We hold that where, as here, petitioner neither sought nor received permission to amend her petition, she is entitled to stand on the petition and have its legal sufficiency reviewed by this court. We therefore proceed to consider that issue.

In reviewing the sufficiency of a complaint, all well-pleaded facts are taken as true, and a cause of action should not be dismissed unless it is clear that no set of facts can be proved which would entitle plaintiff to the relief sought. (*Novak v. Rathnam* (1987), 153 Ill. App. 3d 408, 410, 505 N.E.2d 773.) The purpose of a motion to dismiss under section 2—615 is to raise an issue of law as to the sufficiency of the allegations in the complaint. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 280, 433 N.E.2d 253.) A motion to dismiss relates only to the sufficiency of the complaint and may be based only on matters appearing on the face of the pleading. *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 669, 307 N.E.2d 749; *Triangle Sign Co. v. Randolph & State Property, Inc.* (1957), 16 Ill. App. 2d 21, 26, 147 N.E.2d 451.

Antenuptial agreements are generally enforceable. (*Kuhnen v. Kuhnen* (1933), 351 Ill. 591, 600, 184 N.E. 874; *Eule v. Eule* (1974), 24 Ill. App. 3d 83, 86, 320 N.E.2d 506.) The rules governing construction of other contracts are applicable to antenuptial agreements. (*Collins v. Phillips* (1913), 259 Ill. 405, 411, 102 N.E. 796.) Where the parties enter into such an agreement without fraud, duress or coercion, the agreement is valid. (*In re Marriage of Burgess* (1985), 138 Ill. App. 3d 13, 15, 485 N.E.2d 504.) However, where the parties are engaged to be married before the contract is signed, a confidential relationship exists, and if the provisions made for the wife are disproportionate to the extent and value of the husband's estate, the presumption is raised that the husband intentionally concealed his assets, and the burden shifts to those claiming the validity of the agreement to prove that the wife had full knowledge of the husband's property. *Debolt v. Blackburn* (1927), 328 Ill. 420, 425, 159 N.E. 790; *Yockey v. Marion* (1915), 269 Ill. 342, 347-48, 110 N.E. 34.

Judged by these standards, the allegations of the petition are simply insufficient, even if proved, to invalidate the agreement. First of all, unlike the cases cited by petitioner, the parties entered into their contract, and their marriage, with assets of approximately equal net value. The schedule of petitioner's individual assets which was attached to the petition lists $72,000 equity in a home in Sleepy Hollow,

Illinois; a $54,000 condominium in Des Plaines, owned free of any incumbrances; and jewelry, silver and crystal of value "[u]nknown but believed to be substantial." The schedule also lists $30,000 in certificates of deposit and an unknown inheritance, also believed to be substantial.

The schedule of Thomas' assets lists a $34,000 to $54,000 equity in a home in Wheaton, a $70,000 interest in an "Employee retirement plan" (the estate does not contend that this is the same pension plan referred to in the petition), $135,000 of life insurance, interests in two partnerships valued at $755,000 but encumbered by $655,000 in debts, plus employee stock options and deferred compensation of unknown value. Given the general estimates of petitioner's individual assets and of Thomas' net assets, it is impossible to conclude from the face of the pleading that Thomas was in a substantially better financial position at the time of the marriage than was petitioner. By permitting petitioner to retain her own property, the provision made for her is reasonably proportional to the extent of Thomas' estate.

Furthermore, the extensive nature of both parties' assets demonstrates that the two omissions, a $19,000 savings bond and a pension plan paying a benefit of approximately $5,500 per year, were not substantial particularly where it is not disputed that she is receiving the $5,500 annual pension benefit. Given that Thomas' scheduled assets showed an equity well in excess of $300,000, it cannot be said that the exclusion of these relatively minor assets amounted to a misrepresentation as to the extent of his estate. The omissions were within the penumbra of the declaration of the agreement that the schedules were not intended to be exhaustive.

Finally, the complaint fails to allege precisely what provisions were made for petitioner's benefit. Although the agreement itself makes no provision for her except that she retain her own property, the petition does not allege that no other arrangements were made for petitioner to share in Thomas' property, by will or otherwise. Although not properly considered in a section 2—615 motion, the estate's motion to dismiss indicates that petitioner did receive some substantial assets from Thomas' estate, including the very pension plan at issue. Nowhere does petitioner dispute the accuracy of these allegations. It is impossible to evaluate the nature of the entire estate plan when essential elements of that plan are missing from the allegations of the petition.

*Petru v. Petru* (1954), 4 Ill. App. 2d 1, 123 N.E.2d 352, cited by petitioner, does not alter our conclusion. There the court stated the rule that a presumption of fraud in an antenuptial agreement arises

from a "manifestly inadequate pecuniary provision." (*Petru*, 4 Ill. App. 2d at 10.) We have already determined that the provisions made for petitioner were not manifestly inadequate. Although the *Petru* court stated that the period of time which elapses between execution of the contract and the marriage is a factor to be considered in deciding whether to invalidate the agreement, it is only one factor among many. (*Petru*, 4 Ill. App. 2d at 11.) Here, although the contract was signed the day before the wedding, the other factors, such as the relative age, experience and understanding of the parties, are either not adequately alleged in the petition or appear to be approximately equal.

In summary, the contract does not appear to be unfair to petitioner. Each party retains substantial individual assets, and the allegations of the petition do not demonstrate that the decedent concealed substantial assets. The petitioner should not be allowed to invalidate the contract in order to receive a disproportionate share of the parties' total assets. Therefore, the judgment of the circuit court dismissing the petition to invalidate the antenuptial agreement is affirmed.

Affirmed.

INGLIS and NASH, JJ., concur.