In *re* ESTATE OF THOMAS ROBERT HOPKINS, Deceased (Terri-Beth Brown, Petitioner-Appellee, v. Nancy L. Hopkins, Respondent-Appellant; Borg-Warner Corporation, Respondent).

Second District   Nos. 2—90—0894, 2—90—1007 cons.

Opinion filed June 7, 1991.

428

Arvey, Hodes, Costello & Burman, of Chicago (Joel S. Siegel, of counsel), for appellant.

Nisen & Elliott and Stephen P. Bedell, of Gardner, Carton & Douglas, both of Chicago (John Kevin Kneafsey, of counsel), for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Petitioner, Terri-Beth Brown, and respondent, Nancy L. Hopkins, each filed a motion for summary judgment asking that Borg-Warner Corporation be directed to distribute to the respective movant the benefits due under a Borg-Warner Investment Plan (Plan) as a result

of the death of the Plan's participant, Thomas Robert Hopkins, the decedent. The trial court granted Terri-Beth's motion for summary judgment and denied Nancy's. Subsequently, the trial court ordered Borg-Warner to distribute the decedent's benefits to Terri-Beth. Nancy timely appeals both orders, and the appeals have been consolidated. On appeal, the following issues are raised: (1) whether the antenuptial agreement entered into between the decedent and Nancy precludes Nancy from receiving decedent's benefits under the Plan and (2) whether the trial court abused its discretion in denying Nancy's motion to file *instanter* a second amendment to her answer to the petition for distribution of benefits. We affirm.

Respondent, Nancy L. Hopkins, is the surviving spouse of the decedent, Thomas Robert Hopkins. Nancy and the decedent were married on April 17, 1982. The day before their marriage, April 16, 1982, Nancy and the decedent entered into an antenuptial agreement which provided that each party would retain his or her separate property and would not have any rights to the estate or property of the other when the marriage was terminated by death or legal proceedings. The decedent died on November 11, 1985.

At the time of his death, and for a number of years prior thereto, the decedent was employed by the Borg-Warner Acceptance Corporation, a subsidiary of the Borg-Warner Corporation. During his employment, the decedent participated in the Borg-Warner Corporation Investment Plan. In August 1977, the decedent executed a beneficiary designation form under the Plan, naming Margaret C. Hopkins, the decedent's daughter from a previous marriage, as the beneficiary of the benefits due under the Plan. The decedent further provided that, if Margaret were a minor at the time of his death, the benefits were to be paid to petitioner, Terri-Beth Brown, decedent's sister, as trustee for Margaret. Margaret is presently a minor.

Effective August 23, 1984, the Retirement Equity Act of 1984 (REA) (29 U.S.C. §1055 (1988); 26 U.S.C. §§401, 417 (1988)) amended various provisions of the Employee Retirement Income Security Act of 1974 (ERISA) and the Internal Revenue Code. The applicable amended provisions provide that qualified plans must provide that the surviving spouse is to receive benefits under a plan following the death of the participant spouse unless the surviving spouse consents in writing to waive the benefits and such writing is witnessed by a plan representative or a notary public.

There is no dispute that the Borg-Warner Investment Plan is a qualified plan within the terms of the amendment. Consequently on September 3, 1985, Borg-Warner amended its Plan to incorporate the

above changes. The Plan now provides that a participant's spouse must consent in writing to any designation of a beneficiary unless the spouse is designated as the beneficiary.

Borg-Warner notified all married participants in the Plan, by letter dated February 15, 1985, that REA required the consent of a participant's spouse if the participant had designated someone other than his or her spouse as his or her beneficiary under the Plan. If a nonspouse had been previously designated, the participant was informed to complete a new beneficiary designation form and to include the spouse's signature. The letter requested the participant to return the new form no later than March 31, 1985. According to the letter, if the spouse's consent for a nonspouse beneficiary was not on file with the Plan administrator at the time of the participant's death, the participant's account balance would be paid to his or her spouse notwithstanding the fact that another beneficiary had been designated. Although there is nothing in the records of Borg-Warner confirming that the decedent received the February 15 letter, a social acquaintance and co-worker of the decedent indicated that the decedent did, in fact, receive the letter.

Borg-Warner never received a new beneficiary designation form from the decedent, nor did Nancy ever sign a designation form consenting to the designation of a nonspouse beneficiary.

After the decedent's death, Terri-Beth Brown was appointed as the executor of the decedent's estate. Terri-Beth filed a petition in the probate court requesting that Borg-Warner be ordered to distribute the decedent's benefits under the Plan to her as trustee for Margaret Hopkins, the decedent's minor daughter.

Subsequent to the filing of Terri-Beth's petition, Nancy filed an action in the United States District Court for the Northern District of Illinois seeking to recover the benefits under the investment Plan and stating that the Federal court had exclusive jurisdiction pursuant to 28 U.S.C. §1332 (1988) and also based upon section 1132(e)(1) of ERISA (29 U.S.C. §1001 *et seq.* (1988)) (*Hopkins v. Brown* (N.D. Ill. August 7, 1986), No. 86—C—2260). Terri-Beth filed a motion to dismiss the complaint on the basis that a parallel proceeding was pending in probate court in Du Page County and that the Federal court should, therefore, apply the abstention doctrine to permit the State court proceedings to be completed without interference. The Federal district court ruled that the abstention doctrine applied; however, rather than dismissing the proceedings, the Federal court stayed the proceedings pending resolution of the cause in the State court.

After the Federal district court made its ruling, Nancy filed a petition in the circuit court to set aside the antenuptial agreement. The circuit court dismissed the petition to invalidate the agreement, and Nancy appealed. This court affirmed the dismissal and the validity of the agreement. *In re Estate of Hopkins* (1988), 166 Ill. App. 3d 652.

Terri-Beth then filed a motion for summary judgment (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005) on her earlier filed petition, seeking the court to order Borg-Warner to honor the designation of beneficiary form signed by the decedent and to distribute the funds in the Plan to Margaret Hopkins. Nancy filed a similar motion requesting that the court direct Borg-Warner to distribute to her all of the benefits due under the Plan.

At the conclusion of the hearing on the motions, Nancy presented a motion for leave to file a second amendment to her answer. The trial court denied Nancy's motion for leave to amend and subsequently denied her motion for summary judgment. The trial court granted summary judgment in favor of Terri-Beth and ordered Borg-Warner to distribute decedent's benefits under the Plan to Terri-Beth. Nancy appeals.

Initially, we note that a motion for summary judgment should be granted when the pleadings, depositions, admissions, and affidavits establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Zaferopulos v. City of Chicago* (1990), 206 Ill. App. 3d 904, 908.) Here, the parties apparently agree that there is no material issue as to fact; however, each party claims that as a matter of law, she is the one who is entitled to judgment. The central issue in deciding the case is whether the antenuptial agreement signed by Nancy was sufficient to waive her right to receive the decedent's benefits under the Plan.

■■ ■ This court has already determined that the antenuptial agreement entered into between Nancy and the decedent is valid and enforceable (*Hopkins*, 166 Ill. App. 3d at 658); thus, we need only to construe the effects of that agreement. Generally, the rules governing construction of other contracts are applicable to antenuptial agreements. (*Hopkins*, 166 Ill. App. 3d at 656.) In determining the scope of an antenuptial agreement, the agreement should be read in its entirety so that the real intentions of the parties are given effect. (*In re Estate of Anderson* (1990), 195 Ill. App. 3d 644, 649.) A right in the estate of a spouse can be relinquished without the use of precise words to that effect, providing that the contract contains sufficient language showing that it was the intention of the parties to release

such a right in the antenuptial agreement. *Anderson*, 195 Ill. App. 3d at 650.

We agree with the trial court that, in reading the antenuptial agreement in the case at bar, it is clear that the parties intended Nancy to waive any rights she had to the decedent's benefits under the Plan. Paragraph (4)(b) of the agreement states:

> "Nancy agrees to disclaim, release, and relinquish to [the decedent], his heirs, legal representatives, assigns, legatees, and devisees all and singular, all and every right, claim, estate whether actual, inchoate, or contingent of every kind and character she might, would or could have by reason of marriage, or surviving spouse, heir at law, or otherwise."

Attached to the agreement is a schedule of the decedent's property, which includes an employee retirement plan that appears to be a reference to the Plan in question. Although the agreement does not specifically include the terms "benefits" or "beneficiary," we find that the language in the agreement is sufficiently comprehensive to include any rights Nancy has under the Plan.

Nancy contends that the antenuptial agreement is ineffective in waiving her rights under the Plan because she did not obtain those rights until REA was enacted, which was over two years into their marriage. However, it is clear by the language of the agreement that the waiver was intended to include any future acquired rights. Specifically, the recital provision of the agreement provides, in part, that "[i]t is the intention of the parties that any property which they may hereafter acquire and/or inherit in their sole and separate capacities shall remain separate and free from claims of the other, the same as the separate property now owned by them." Paragraph 3 provides that the term "property" used in the agreement "shall include all the property now owned or hereafter acquired." Finally, paragraph 4 provides:

> "All properties of any name or nature, real or personal or mixed, wherever they may be found belonging to [the decedent] before, or acquired after the marriage or to which he may become entitled by inheritance or otherwise shall be and remain forever his own real and personal estate as if the contemplated marriage had never occurred."

We find from the prospective nature of the language that all future rights acquired by Nancy under the Plan were waived by the agreement.

Nancy contends that even if the antenuptial agreement waived her rights to the decedent's benefits, the waiver was ineffec-

tive under REA and the Plan. As stated above, REA provides that a surviving spouse is to receive the benefits under a qualified plan following the death of the covered spouse unless such benefits are specifically waived by the surviving spouse. (29 U.S.C. §1055 (1988).) A waiver of benefits must be in writing, acknowledging the effect of the waiver, and witnessed by a plan representative or a notary public. 29 U.S.C. §1055(c)(2) (1988).

■ Nancy contends that these statutory provisions control rather than State law. In support, Nancy cites to section 1144(a) of ERISA, which provides that Federal law shall supersede all State laws which "relate to" an ERISA plan. (29 U.S.C. §1144(a) (1982).) A law "relates to" an ERISA plan "if it has a connection with or references to such a plan." (*Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 96-97, 77 L. Ed. 2d 490, 501, 103 S. Ct. 2890, 2900.) The designation of beneficiaries plainly relates to an ERISA plan, and thus, Federal law applies. *McMillan v. Parrott* (6th Cir. 1990), 913 F.2d 310, 311; *Fox Valley & Vicinity Construction Workers Pension Fund v. Brown* (7th Cir. 1990), 897 F.2d 275, 278.

Terri-Beth's citation to *In re Estate of Anderson* (1990), 195 Ill. App. 3d 644, does not persuade us otherwise. We note that the preemption statute applicable in *Anderson* is much narrower in scope than the statute governing ERISA. The *Anderson* statute preempted State law which relates to group life insurance to the extent that the law is inconsistent with the contractual provisions. In comparison, the ERISA statute simply preempts State law that relates to *any* nonexempt employee benefit plan. Because ERISA is such a comprehensive statute, we find that it preempts State law (*Arnold v. Babcock & Wilcox Co.* (1987), 154 Ill. App. 3d 863, 870); thus, *Anderson* is not controlling.

Despite the fact that Federal law controls the resolution of this issue, we find that the antenuptial agreement was a sufficient waiver of Nancy's rights to the benefits under the Plan. As our above discussion indicates, we find that the antenuptial agreement included a waiver by Nancy of any right in the Plan. This waiver is in writing and is notarized as required under REA. In addition, it has already been held that a surviving spouse can waive her interests in a plan under REA without following its specific waiver requirements. *Fox Valley*, 897 F.2d at 279.

In *Fox Valley*, the decedent had named his wife as beneficiary under an employee benefits plan. The couple was subsequently divorced and entered into a court-approved property settlement that included the following proviso: " 'The parties each waive any interest or claim

in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party.' " (*Fox Valley*, 897 F.2d at 277.) After the divorce, the couple continued to live together, and the decedent made no effort to change his designated beneficiary before his death a year later. The court held that while the wife was designated as the beneficiary, she was not entitled to the pension benefits because she waived her interest in the benefits in the property settlement. (*Fox Valley*, 897 F.2d at 281.) Although Federal statute specifies the procedure necessary to assign benefits, the court held that those procedures need not be followed when a nonparticipant is waiving an interest in pension benefits. *Fox Valley*, 897 F.2d at 279-80.

■ Similarly, Nancy waived her right to receive the pension benefits through the use of the antenuptial agreement. We find this to be an effective waiver despite the fact that the agreement does not specifically acknowledge the effect of the benefits waived as required by REA. (29 U.S.C. §1055(c)(2)(A) (1988).) We note that the agreement implies the effect of the waiver, which we find to be sufficient under *Fox Valley*.

Nancy's reliance on *McMillan v. Parrott* (6th Cir. 1990), 913 F.2d 310, is unpersuasive. In *McMillan*, the decedent was a participant in two ERISA plans. He named his wife as cobeneficiary along with his son from a prior marriage. The couple was subsequently divorced and entered into a joint settlement, whereby each spouse relinquished "any and all" claims he or she might have against the other. However, the decedent failed to remove his wife's name as beneficiary under the plans before his death. ERISA mandates that a plan administrator discharge his duties " 'in accordance with the documents and instruments governing the plan.' " (*McMillan*, 913 F.2d at 311, quoting 29 U.S.C. §1104(a)(1)(D) (1982).) The *McMillan* court held that the designation in the plans' documents controlled, not the surviving ex-spouse's intent and, thus, the waiver was ineffective. *McMillan*, 913 F.2d at 312.

*McMillan* is distinguishable from the case at bar in several respects. First, we note that the ex-wife in *McMillan* was named as a beneficiary in the plan, and it was she who was given the proceeds under the plan. In the case at bar, the decedent's daughter was named as the beneficiary, not Nancy. Thus, if we are to determine the decedent's intent by the designation on file at the time of his death, it is clear that Margaret should prevail. (*McMillan*, 913 F.2d at 312.) Further, we note that the waiver at issue in *McMillan* was much more general than the waiver in the case at bar, and the *McMillan*

waiver made no mention of the plans. (*McMillan*, 913 F.2d at 312.) Here, we have already determined that the antenuptial agreement did refer to the Plan and, thus, *McMillan* is not controlling.

Despite Nancy's contentions to the contrary, we find our interpretation of REA to be consistent with Congress' intent in enacting the amendment. The Senate report indicated, under the heading entitled "Reasons for Change," the following:

"The committee believes that present law results in inequitable treatment of participants in pension plans who die before reaching the normal retirement age under the employer's plan. Under the rules of present law, the participant's spouse may be entitled to no survivor benefits under the plan even though the participant had accrued significant vested benefits before death. Therefore, the committee believes that it is appropriate to provide automatic survivor benefits to the spouse's [*sic*] of vested participants.

In addition, because the committee believes that a spouse should be involved in making choices with respect to retirement income on which the spouse may also rely, the bill requires spousal consent when a participant elects not to take a survivor benefit." Sen. Rep. No. 98-575, *reported in* 1984 U.S. Code Cong. & Admin. News 2558.

Here, Nancy was not entitled to rely on the pension as retirement income because she waived her right to do so in the antenuptial agreement. She clearly made an informed choice in entering the agreement, and, as such, she should not now be allowed to renege on that agreement. We do not find our interpretation of the amendment to be inconsistent with Congress' intent.

Nancy concedes in her memorandum that the REA does not specifically prohibit the use of a prospective waiver; however, she maintains that the prohibition is implied by the fact that the statute requires spousal consent. She argues that, because she was not a spouse when she signed the antenuptial agreement, the waiver contained therein does not satisfy the statute. We disagree. Nancy and the decedent entered into the antenuptial agreement in contemplation of marriage. The agreement was intended to settle in advance the rights of the respective spouses in the property of each other upon divorce or death. (*Eule v. Eule* (1974), 24 Ill. App. 3d 83, 86.) Thus, the agreement is designed to be entered into prior to marriage, when the parties have no rights in one another's estates. We have already determined that the agreement in the case at bar included the waiver of pension benefits. The fact that Nancy was not a spouse when she

made the waiver is irrelevant. Again, we rely on *Fox Valley* to find that the waiver was sufficient under REA.

■ In arguing that the antenuptial agreement lacks the requisite statutory consent, Nancy cites to a question and answer provided by the Treasury Department. Specifically, Question and Answer 28 of Treasury Regulations §1.401(a)—20 states:

"Q—28: Does consent contained in an antenuptial agreement or similar contract entered into prior to marriage satisfy the consent requirements of section 401(a)(11) and 417?

A—28: No. An agreement entered into prior to marriage does not satisfy the applicable consent requirements, even if the agreement is executed within the applicable election period."

First, we note that it is doubtful whether the Internal Revenue Code is even applicable to the issue presented. However, as Nancy apparently concedes, the question and answer above is an interpretative rule and, as such, is not binding. The precedential value of an interpretative rule has been explained as follows:

" 'Interpretative' regulations are those which purport to do no more than interpret the statute being administered, to say what it means. They constitute the administrator's construction of a statute. In such instances the administrative agency is merely anticipating what ultimately must be done by the courts; they are performing a judicial function rather than a legislative function, and interpretative regulations (in the absence of ratification by the legislature) have validity in judicial proceedings only to the extent that they correctly construe the statute and then, strictly speaking, it is the statute and not the regulation to which the individual must conform." (1 Am. Jur. 2d *Administrative Law* §95, at 893 (1962).)

We find that the answer provided by the Treasury Department to question 28 is incorrect as applied to our case and, thus, decline to follow it.

Our above analysis regarding the effect of the antenuptial agreement on REA is equally applicable to the Plan's amendment. The fact that Nancy did not consent, as required in the corporation's February 15, 1985, letter, does not affect the validity of the waiver in the antenuptial agreement. The changes made to the Plan were a direct result of the enactment of REA and very similar language was used. Thus, an effective waiver under REA is similarly effective under the Plan.

■ Next, Nancy contends that the decedent intended by his inaction to make her the beneficiary under the Plan. Nancy argues that

the antenuptial agreement did not prohibit the decedent from naming her as his beneficiary, nor was she precluded from accepting any gift from the decedent of his property. Nancy cites to numerous assets, including benefits from Borg-Warner, that the decedent gave to her. Nancy contends that the decedent's inaction after receiving the letter from Borg-Warner, informing him of the need to redesignate a non-spouse beneficiary, "coupled with his knowledge of the consequences thereof indicate his intent to make Nancy his beneficiary under the Plan as he had previously made her the beneficiary of other benefits." We disagree. In a majority of the "other benefits" cited, Nancy was made an equal beneficiary with the decedent's daughter, Margaret. In addition, Margaret was named as the sole legatee in the decedent's will. The antenuptial agreement specifically provided: "It is the parties' intention *** to leave their respective properties in each case, solely to their children by the previous marriages." Thus, the fact that Nancy was given a few assets by the decedent does not indicate to us that the decedent intended to name Nancy as the sole beneficiary under the Plan in question.

■ Further, any claim made by Nancy that the decedent made a gift to her of the benefits is without merit. A "gift" is defined as "a voluntary, gratuitous transfer of property by one to another where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee." (*In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 849.) Nancy has presented no persuasive evidence as to donative intent, nor has she presented any evidence indicating a delivery. The burden of proof rests upon the donee to prove all facts essential to a valid gift (*Pocius v. Fleck* (1958), 13 Ill. 2d 420, 427); Nancy has clearly failed to meet her burden. Consequently, we find that no gift was made, that the antenuptial agreement controls, and that Nancy waived her right to receive the Plan's benefits.

Finally, Nancy contends that the trial court erred in denying her motion for leave to file *instanter* a second amendment to her answer. Nancy attempted to file the amendment at the conclusion of the hearing on the motions for summary judgment. In presenting the motion to the trial court, Nancy maintained that there was nothing new in the amendment, rather she argued that she wanted to file the amendment in order to conform her answer with the allegations contained in her memorandum in support of her motion for summary judgment. Terri-Beth objected, and the trial court denied the motion stating that, if the motion for summary judgment did not dispose of the case on the pleadings, Nancy could file anything she needed to amend. On

appeal, Nancy contends that in so ruling, the trial court abused its discretion.

Section 2—1005(g) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(g)) provides: "Before or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." Terms are considered to be "just and reasonable" if, by permitting the amendment, the ends of justice will be furthered. (*Wingate v. Camelot Swim Club, Inc.* (1990), 193 Ill. App. 3d 963, 967.) The relevant factors in determining whether the trial court properly exercised its discretion in denying the amendment proposed are: whether the proposed amendment would cure the defective pleading; whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; the timeliness of the proposed amendment; and whether previous opportunities to amend the pleadings could be identified. *Siebert v. Continental Oil Co.* (1987), 161 Ill. App. 3d 891, 895.

Because the proposed amendment would not have cured Nancy's defective answer, we find no abuse of the trial court's discretion in denying her motion for leave to amend. In ruling on a motion for summary judgment, the trial court is to consider the pleadings, admissions, and affidavits, if any, to determine whether there is a genuine issue as to material fact and whether the moving party is entitled to judgment as a matter of law. (*Zaferopulos v. City of Chicago* (1990), 206 Ill. App. 3d 904, 908.) Here, Nancy concedes that the allegations in her amendment are not new, as they are contained in her memorandum in support of her motion for summary judgment. In ruling on the motions for summary judgment, the trial court was bound to consider Nancy's memorandum, which included the allegations contained in her proposed amendment. Thus, the trial court was correct in finding that the proposed amendment would have been ineffective in curing any defects in Nancy's answer.

Accordingly, for all the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

McLAREN and GEIGER, JJ., concur.