In re ESTATE OF Harold
M. ARBEITMAN,

Donna ARBEITMAN, Appellant,

v.

Mark RABIN, Personal Representative,
Respondent.

No. 64697.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 27, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 31, 1994.

John L. Sullivan, Dianne S. Johnson, John L. Sullivan, P.C., St. Louis, for appellant.

Michael A. Wolff, Charles A. Seigel, III, Seigel & Wolff, St. Louis, for respondent.

CRANDALL, Judge.

Donna Arbeitman (wife), appeals from orders of the trial court, probate division, which declared that a prenuptial agreement executed between her and decedent, Harold M. Arbeitman, was valid and binding, and that the agreement was effective to bar her rights to certain statutory allowances. We affirm.

The facts, viewed in the light most favorable to the trial court's order, reveal that Harold M. Arbeitman died testate. He was survived by his second wife, Donna Arbeitman, and his children by a previous marriage, Brooke and Christopher Arbeitman. An estate was opened for administration and defendant, Mark Rabin, was appointed personal representative of the estate.

Brooke Arbeitman filed her "Petition For Judgment Barring Surviving Spouse From Marital Rights," seeking an order barring wife from all rights as surviving spouse in the decedent's estate on the grounds that she had waived those rights when she executed the prenuptial agreement with decedent.

Wife, as surviving spouse, filed her application for exempt property, homestead allowance, and spousal allowance. Wife also filed a petition seeking an order that the prenuptial agreement was "void without force and effect."

The agreement provides, in relevant part:

... WHEREAS, both parties desire to accept the provisions of this Agreement in lieu of all rights which either of them would otherwise acquire, by reason of the contemplated marriage, in the property or estate of the other; and,

WHEREAS, each party has fully disclosed to the other the extent and approximate present value of all of his or her property and all of the rights and privileges in and to such property ...

(e) Neither party shall have or establish or make claim to any title, interest, rights or claims, in the Separate Property of the other, other than as donee or beneficiary under a written document.

(f) The residential real estate consisting of a single family residence and accessory buildings located on approximately seven (7) acres in West County, St. Louis, Missouri shall be exempt from the provisions of this agreement including any restrictions or limitations relating to the interest therein of either party and shall be deemed and considered and is deemed and considered by the parties to be marital property. In order to implement the provision of the subparagraph, and as further consideration thereof, Harold M. Arbeitman agrees of (sic) excute (sic) and at all times maintain a last will and testament containing a provision that [wife] shall inherit, as her exclusive property, the marital realestate (sic) referred to in this subparagraph ...

2. In the event of the death of either party ... neither party shall have or seek to establish any title, interest, rights or claims in the Separate Property of the other. Specifically, each of the parties desires to accord to the other the absolute and unrestricted privilege and power to dispose of any and all property on death which may belong to him or her at such time and future Wife clearly understands that if future Husband should predecease her, her statutory interest in the estate of future Husband would be greatly in excess of the provision herein made for her ...

6. This Agreement is made in the State of Illinois, the parties acknowledging that they are residents of both the State of Missouri and the State of Illinois and that this Agreement shall be interpreted in accordance with the laws of the State of Illinois ...

In the agreement, decedent listed the assets of his estate and indicated a total value of his estate in excess of $5,000,000. However, at the hearing, the personal representative testified that the estate, at best, had a net worth of $2,000,000. The agreement also listed wife's separate property, totalling $24,000. The marital residence which decedent was obligated to devise to wife as her exclusive property is valued as having a net worth between $1,000,000 and $1,200,000.

On appeal, wife claims the trial court erred in upholding the prenuptial agreement because 1) the agreement was procured under duress; and 2) the agreement was procured by fraud due to inadequate disclosure of decedent's estate.

■ Wife's claim of error involves factual determinations which are generally the prerogative of the trial court. Conflicts in the evidence are for the trial court to resolve and the facts must be taken in accordance with the result reached. *Best v. Culhane*, 677 S.W.2d 390, 393 (Mo.App.1984). The trial court, as the fact finder, may believe all, part, or none of the testimony presented. *Id.*

At trial, wife testified that she met decedent in 1982, and lived with him for four or five years prior to their marriage in 1987. Evidence, including testimony from wife, demonstrated that she had knowledge of decedent's business affairs before their mar-

riage, and had even worked in decedent's businesses.

When they decided to marry, decedent presented the prenuptial agreement to wife. Decedent told her to consult a lawyer, and informed her that she must sign the agreement before they married. Wife did consult a lawyer, who unsuccessfully attempted to negotiate certain changes in the document with decedent's lawyer. Wife's lawyer advised her to not sign the prenuptial agreement because he felt it was not fair to her, given the information she provided regarding the decedent's assets. Despite this advice, wife ultimately executed the agreement hours before the wedding.

Decedent performed his obligations under the prenuptial agreement by devising the marital residence to wife and bequeathing to her all his tangible personalty.

After hearing the evidence, the trial court ruled that the prenuptial agreement between wife and decedent was valid and binding and was effective to bar wife from any statutory allowances.

██ The prenuptial agreement provides for interpretation under the law of the State of Illinois. Illinois recognizes the right of competent parties to execute prenuptial agreements concerning the ultimate disposition of each one's property. *Fleming v. Fleming*, 85 Ill.App.3d 532, 40 Ill.Dec. 676, 406 N.E.2d 879, 883 (1980). When parties enter into a prenuptial agreement without fraud, duress or coercion, the agreement is valid. *In re Estate of Hopkins*, 166 Ill. App.3d 652, 117 Ill.Dec. 254, 520 N.E.2d 415, 417 (2 Dist.1988).

██ Duress is defined as a "condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will." *Kaplan v. Kaplan*, 25 Ill.2d 181, 182 N.E.2d 706, 709 (1962). The modern test for duress is whether the threat has left the individual bereft of the quality of mind essential to the making of a contract. *Id.* While the period of time which elapses between the execution of the contract and the marriage is a factor to be considered, other factors, such as the relative age, expe-rience and understanding of the parties are also relevant. *In re Estate of Hopkins*, 166 Ill.App.3d 652, 117 Ill.Dec. 254, 520 N.E.2d 415, 418–19 (2 Dist.1988).

Here, wife does not assert that their relative ages, experience, and understanding contributed to decedent overcoming her free will. On the contrary, the record discloses that wife was herself a businesswoman, and that this was the second marriage for both her and decedent. Wife bases her claim of duress solely on the fact that she executed the prenuptial agreement on the day of her wedding to the decedent. The evidence before the court indicated that decedent presented the agreement to wife well before the wedding date. Therefore, the only duress wife claims she suffered appears to be a result of her own delay in signing.

██ Wife also contends that the agreement is invalid because of inadequate disclosure. A confidential relationship exists between the parties if they are engaged to be married before they enter into the contract. *In re Estate of Hopkins*, 117 Ill.Dec. at 256–57, 520 N.E.2d at 417–18. Therefore, if the provision made for the spouse is disproportionate to the extent and value of the decedent's estate, a rebuttable presumption of concealment by the decedent is raised. *Id.* at 257, 520 N.E.2d at 418. The validity of such prenuptial agreements depends upon whether the parties have knowledge or reasonably ought to have knowledge of the extent of each other's property. *Fleming*, 40 Ill.Dec. at 680, 406 N.E.2d at 883. Information as to the nature and extent of the decedent's holdings need not come directly from him; surrounding circumstances may be such as to charge the spouse with knowledge of his property. *Watson v. Watson*, 5 Ill.2d 526, 126 N.E.2d 220, 223 (1955).

Here, although the decedent's assets were set out in the prenuptial agreement as totalling $5,000,000, they were valued closer to $2,000,000 at death. Plaintiff's receipt of a residence valued between $1,000,000 and $1,200,000 is not disproportionate to the net value of decedent's estate. Further, there was evidence that wife had knowledge of the decedent's business dealings. She had

known him for eleven years; she had lived with him for four years prior to their marriage; and she had worked in his businesses. This evidence belies wife's claim of inadequate disclosure. Additionally, decedent, at worst, overvalued his assets in the prenuptial agreement, rather than concealed their worth. The trial court did not abuse its discretion in declaring the prenuptial agreement valid. Plaintiff's first point is denied.

In her second point, wife contends the trial court erred in denying her petitions for a homestead allowance, exempt property, and a family allowance because the prenuptial agreement was ineffective to bar her rights to those statutory allowances. She asserts that specific language must be used for the surviving spouse to waive these statutory rights.

Wife filed petitions for spousal allowance, homestead allowance, and exempt property. *See* §§ 474.260, 474.270, and 474.250, RSMo 1986, respectively. These statutory allowances are deemed waived if "prior to, or after, the marriage, such intended spouse or spouse by a written contract did agree to waive such rights, after full disclosure of the nature and extent thereof, including the nature and extent of all property interests of the parties ..." § 474.120, RSMo 1986. To be effective, a prenuptial agreement need not specifically identify each of the statutory rights being waived, so long as the instrument as a whole indicates the parties' intention to waive these rights. *Roberts v. Estate of Roberts,* 664 S.W.2d 634, 639 (Mo.App. 1984). In *Roberts,* the prenuptial agreement provided that:

> all property belonging to either of [the parties] at the commencement of the marriage, or coming to each of them during the marriage, shall be enjoyed by him or her, and be subject to his or her separate property in the same manner as if the said proposed marriage had never been celebrated.

*Id.* at 636. The court found this language clearly and unambiguously showed that the parties meant to keep their premarital estates completely separate following their marriage. *Id.* at 639. In rebuttal to the surviving spouse's argument that the agreement failed to expressly waive his right to exempt property, homestead allowance and family allowance, the *Roberts* court pointed out that his argument overlooked the fact that all such allowances must come from the decedent's estate. *Id.*

Here, the prenuptial agreement likewise provided that the wife's and the decedent's premarital estates were to remain separate following their marriage, with the sole exception of the marital residence. The allowances requested by the wife must necessarily come from the decedent's estate. This provision, therefore, also acts to waive such rights as exempt property, family allowance, and homestead allowance in the separate estate of decedent. Wife's second point is denied.

The orders of the trial court are affirmed.[1]

CRANE, P.J., and CARL R. GAERTNER, J., concur.

---

1. Respondent's motion to dismiss wife's appeal is denied.