No. 2--98--0511 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

In
 
re
 MARRIAGE OF LYNDA L.

DiFATTA,

Petitioner and Counter-respondent-Appellant,

and

JOSEPH V. DiFATTA,

Respondent and Counter-petitioner-Appellee.

)

)

)

)

)

)

)

)

)

)

)

)

)

 Appeal from the Circuit      Court of Du Page County.

 No.  95--D--2799

 Honorable

 Thomas J. Riggs,

 Judge, Presiding.

JUSTICE COLWELL delivered the opinion of the court:

Petitioner, Lynda L. DiFatta, appeals from the circuit court  of Du Page County’s judgment for dissolution of marriage.  On review, we address the following issues: (1) whether petitioner is barred from receiving maintenance from respondent, Joseph V. DiFatta, pursuant to the parties’ antenuptial agreement; (2) whether the proceeds from a life insurance policy and from petitioner’s personal injury settlement were marital property and, if so, whether petitioner improperly dissipated them; and (3) whether the trial court properly determined that under the parties’ antenuptial agreement respondent was entitled to sole possession of his pension.  We are also asked to determine the amount of child support that respondent overpaid.

BACKGROUND

Petitioner and respondent were married on July 23, 1983.  Three days prior to the marriage, the parties executed an antenuptial agreement.  The agreement, which was prepared by petitioner’s counsel, was executed to settle "all property rights *** and *** all matters of maintenance and support[.]"  On September 8, 1992, the only child of the marriage, Taylor DiFatta, was born.  On October 23, 1995, petitioner filed a petition for a legal separation.  On January 3, 1996, respondent filed a counterpetition for the dissolution of marriage.

The evidence at trial, which commenced August 14, 1997, revealed that during the marriage the parties resided in a house located in Bartlett, Illinois.  Petitioner had been awarded the house pursuant to a judgment of dissolution from a prior marriage. Before her marriage to respondent, petitioner alone paid the mortgage for the house.  However, respondent testified that after their marriage he contributed funds to help pay the mortgage.  In August 1990, the parties refinanced the home and changed ownership in the house to a joint tenancy.  In 1993, the parties changed the form of ownership to a tenancy by the entirety.

Petitioner did not hold down a full-time position while she was married to respondent.  Although she did work part time at several different positions, respondent asked her not to work outside the marital home.  Thereafter, petitioner worked solely as a homemaker.  At the time of the marriage, respondent was employed as a truck driver.  However, he later found work as an electrician and became a member of the Illinois Brotherhood of Electrical Workers (IBEW).  As a member of the IBEW, respondent was eligible to participate in the IBEW’s pension plan. 

On December 3, 1997, the circuit court entered a judgment dissolving the marriage.  The court determined that the antenuptial agreement between the parties was valid and binding; that under the antenuptial agreement petitioner was not entitled to maintenance from respondent; that petitioner had dissipated two marital assets, the proceeds from a life insurance policy and from a personal injury settlement; that respondent was entitled to a credit for overpayment of child support; and that respondent’s IBEW pension was his sole and separate property.

A joint parenting agreement was entered at the same time as the judgment for dissolution of marriage.  This agreement required respondent to pay $130 per week in child support.  However, the support order temporarily reduced that amount to $100 per month for a period of eight years in light of the fact that respondent had overpaid child support and petitioner had dissipated marital assets.  Respondent was awarded the income tax dependency exemption for the minor child.

On January 5, 1998, petitioner filed a motion for the modification of judgment of the dissolution of marriage and joint parenting agreement.  In her motion, petitioner claimed, 
inter alia
, that she was entitled to maintenance; that she did not dissipate any marital assets; that respondent was not entitled to sole possession of the IBEW pension; and that the trial court incorrectly calculated the credit due respondent for the overpayment of child support.  Petitioner also sought reconsideration of the determination of respondent’s net income for child support purposes and the decision to award respondent the dependency exemption for income tax purposes.  The trial court dismissed petitioner’s motion on March 20, 1998, and she timely appealed.

ANALYSIS

I. Antenuptial Agreement

[
The material in this section is nonpublishable under Supreme Court Rule 23
 
(166 Ill. 2d R. 23.)]

Petitioner first argues that the trial court’s determination that the antenuptial agreement precluded an award of maintenance was against the manifest weight of the evidence.  According to petitioner, the agreement did not contain a specific waiver of maintenance.  Petitioner also claims that even if this court determines that the antenuptial agreement contains a provision waiving maintenance, it is invalid because the agreement does not contain a fair and equitable settlement in lieu of maintenance.  Finally, petitioner complains that the trial court failed to adjudge the fairness of the antenuptial agreement at the time of the dissolution.

Respondent contends that the trial court’s finding is supported by the manifest weight of the evidence.  Respondent notes that it was petitioner’s attorney who drafted the antenuptial agreement, and, as such, it should be construed against her.  In addition, respondent maintains that the terms of the antenuptial agreement are fair.

T
he propriety of a maintenance award and the amount and duration thereof are matters which lie within the discretion of the trial court and will not be disturbed absent an abuse of discretion.  
In re Marriage of Toole
, 273 Ill. App. 3d 607, 611 (1995).  An abuse of discretion occurs only where no reasonable person would take the view adopted by the court.  
In re Marriage of DeRossett
, 173 Ill. 2d 416, 422 (1996).

In addition, we note that a
ntenuptial agreements are generally enforceable in Illinois.  
In re Estate of Hopkins
, 166 Ill. App. 3d 652, 656 (1988).  The rules governing the construction of contracts are applicable to antenuptial agreements.  
Hopkins
, 166 Ill. App. 3d at 656.  An antenuptial agreement is valid at the time of execution if it was entered with full knowledge and without fraud, duress, or coercion.  
In re Marriage of Burgess
, 138 Ill. App. 3d 13, 15 (1983).  A waiver of maintenance in an antenuptial agreement is enforceable only if some fair and equitable provision is made for support.  
Eule v. Eule
, 24 Ill. App. 3d 83, 88 (1974).  The fairness of a maintenance provision shall be adjudged at the time of dissolution.  
Burgess
, 138 Ill. App. 3d at 15.

Paragraph 11 of the antenuptial agreement provides, in pertinent part:

"11. This agreement is intended by Husband and Wife as a mutual release of all right, title and interest they may now have or will hereafter have, during the lifetime or at the death of either of the parties hereto, acquired by the other, by virtue of the marriage that is contemplated between them under the law of Illinois, or any other state in which they may reside in the future, in and to all the prperty [
sic
], both personal and real, of the other, respectively.  
It is their intention to mutually release and waive all benefits of the laws of Illinois or any other state relating to Husband and Wife as set forth above.
"  (Emphasis added.)

The trial court determined that the language of paragraph 11 of the antenuptial agreement served to bar petitioner from receiving maintenance from respondent.  We agree.  We also note that the parties’ stated purpose in executing the antenuptial agreement was to settle "all property rights *** and *** all matters of maintenance and support[.]"

Nevertheless, petitioner contends that any provision waiving maintenance in the antenuptial agreement is invalid because the agreement does not contain a fair provision in lieu of maintenance.  We disagree.

Paragraph 9 of the antenuptial agreement provides:

"9. Any property now owned as separate property pursuant to this agreement, which is transferred to joint ownership between the parties or property hereafter acquired which is held or owned in joint tenancy with right of survivorship between the parties or the parties hold the same as tenants by the entireties, or which is held in the name of either of them as trustees for the benefit of the other, or which is payable to either of then as co-owners, shall upon the termination of the marriage by divorce, dissolution of marriage, or legal separation, be divided equally between the parties or upon the death of one of the parties, pass and be taken by the other as survivor or beneficiary.  Notwithstanding the foregoing in this paragraph, if such property is purchased with separate funds, of either party, then upon the termination of the marriage by divorce or dissolution of marriage or legal separation, that property shall be awarded to that spouse who provided the funds for said purchase.  For purposes of this Agreement "separate funds" shall consist of all funds held by either party before the marriage and all funds generated from the sale, rental, exchange, transfer, mortgaging of any real or personal property held in the name of that individual party.  Further, "separate funds" shall be further defined as those funds generated by the effort and work of either party throughout the marriage; this would include salaries, interests, dividends and other forms of revenue in said manner."

We find this language was adequate consideration for petitioner’s waiver of maintenance as set out in paragraph 11 of the antenuptial agreement.  Paragraph 9 clearly states that any property owned by the parties separately, which is transferred to joint ownership shall be divided equally upon dissolution or legal separation.

While petitioner may not have benefitted to the extent that she believed she should have, we find these terms were fair and reasonable.  Absent fraud, duress, or coercion, we will not set aside the antenuptial agreement.  See 
Burgess
, 138 Ill. App. 3d at 15.  Petitioner has made no allegation that the antenuptial agreement is the product of fraud, duress, or coercion.  Indeed, it was petitioner’s attorney who prepared the agreement at petitioner’s request.

Petitioner suggests that this interpretation of paragraph 9 is inequitable because it takes the real estate out of her exclusive possession and categorizes the Bartlett, Illinois home as joint property.  Petitioner suggests that paragraph 6 of the antenuptial agreement, which provides that property owned by petitioner alone shall remain hers in case the marriage is dissolved, applies to the Bartlett, Illinois, home.  We disagree.

An antenuptial agreement should be considered in its entirety, together with its general scope and purpose to determine and give effect to the real intention of the parties.  
In re Estate of Klinker
, 80 Ill. App. 3d 28, 30 (1979).  Paragraph 9 of the antenuptial agreement specifically provides that property transferred to joint ownership shall be divided equally among the parties.  The parties do not dispute that the Bartlett, Illinois, home is held in a tenancy by the entirety.  Thus, we reject petitioner’s contention.

We also disagree with petitioner’s contention that the trial court did not judge the fairness of the antenuptial agreement at the time of the dissolution of marriage.  Citing to 
Burgess
, 138 Ill. App. 3d at 15, petitioner claims that "unforseen circumstances" occurred which were not contemplated by the parties.  The alleged unforseen circumstances in this case include the duration of the marriage, the birth of a child, and respondent’s requirement that petitioner stop working.  As a result, she suggests that the issue of maintenance must be reexamined.

We find disingenuous petitioner’s characterization of the duration of the marriage, the birth of a child, and respondent’s alleged request that she not work during the marriage as "unforseen circumstances."  By entering into the antenuptial agreement the parties contemplated the possibility that their marriage may not last forever.  Moreover, we do not believe that the birth of a child and a request by one spouse that the other not work outside the marital home, are "unforeseen circumstances" of a marriage.

In any case, petitioner’s reliance on 
Burgess
 is misplaced.  The 
Burgess
 court noted that Illinois courts are to mitigate the potential harm to spouses which could result from the 
strict enforcement of maintenance provisions of antenuptial agreements.  The 
Burgess
 court noted that at the time of dissolution, courts may consider whether some "untoward circumstance" not contemplated by the parties has occurred such that justice requires a reexamination of the issue of maintenance.  The court cited a condition of penury because of a lack of property resources or a condition of unemployability such as a catastrophic illness as examples of these "untoward circumstances."  
Burgess
, 138 Ill. App. 3d at 15.

We do not believe that the unforeseen circumstances relied on by petitioner are the type of circumstances envisioned by the court in 
Burgess
.  Moreover, petitioner has not pointed to any evidence in the record to demonstrate that she suffers from a catastrophic illness or that she has a lack of property resources.  Petitioner does not allege, and there is no evidence in the record, that the trial court made other than an equal distribution of the marital property.  In addition, we note that the trial court found that petitioner has many skills and is fully capable of employment and self-support.

We also reject petitioner’s reliance on 
Warren v. Warren
, 169 Ill. App. 3d 226 (1988).  In 
Warren
, the court found an antenuptial agreement which waived all maintenance was unenforceable because the agreement provided the wife with no financial settlement at all.  However, 
we have determined that the instant agreement does contain a financial agreement.  Moreover, 
Warren
 is factually distinguishable because in that case, it was the husbands’s attorney who prepared the antenuptial agreement, and there was a dispute as to when the wife was presented with the agreement.  As mentioned, in the instant case, it was petitioner’s attorney who prepared the agreement.

Therefore, we conclude that the trial court did not abuse its discretion in determining that the parties’ antenuptial agreement barred petitioner from receiving maintenance from respondent.

[The preceding material is nonpublishable under Supreme Court Rule 23.]

II. Dissipation of Assets

[The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).]

Next, we address whether funds borrowed from petitioner’s life insurance policy and the proceeds from a personal injury settlement were marital property, and, if so, whether petitioner improperly dissipated these assets,

Petitioner contends
 
that the trial court abused its discretion in determining that the funds from the life insurance policy and the personal injury settlement were marital property under the antenuptial agreement.  She further claims that the money she borrowed from the life insurance policy was a "loan" which she must repay.  Petitioner argues that even in the absence of an antenuptial agreement, the trial court’s decision to award respondent half of her personal injury settlement as marital property would constitute an abuse of discretion.  Petitioner further argues that the trial court erred in finding that she dissipated these assets because she used these funds on legitimate living expenses.

Respondent argues that the trial court properly determined that the proceeds from the life insurance policy and the personal injury settlement were marital property.  Respondent also claims that since petitioner did not provide clear and convincing evidence as to how she spent these funds, a finding of dissipation does not constitute an abuse of discretion.

We first determine whether the money petitioner borrowed against the life insurance policy constituted an asset.  Petitioner claims that the money borrowed against the life insurance policy constitutes debt which she is obligated to repay.  Respondent contends that petitioner presented conflicting evidence as to whether she took a loan or whether she was withdrawing the cash value of the life insurance policy.

We note that petitioner has not provided us with any documentation from which we can determine whether the money borrowed against the life insurance policy may be classified as an asset or as a debt.  At trial, there was conflicting evidence as to whether the money that petitioner claimed to borrow was actually the cash surrender value of the life insurance policy.  The trial court determined that the "loan" was an asset.  Based on the evidence before us, we cannot say that the trial court abused its discretion in finding that the proceeds from the life insurance policy constituted a marital asset.  
In re Marriage of DeRossett
, 173 Ill. 2d 416, 422 (1996).  We reject petitioner’s reliance on 
In re Marriage of Phillips
, 229 Ill. App. 3d 809, 826 (1992).  We note that the loan in 
Phillips
 was a line of credit from a bank which the court determined the husband was required to repay.

Having determined that the proceeds of the life insurance policy is an asset, we now must now address whether the trial court erred in classifying these two assets as marital property.  Petitioner contends that under paragraph 10 of the antenuptial agreement, the assets are her sole property since the money borrowed against the life insurance policy and the proceeds from the personal injury settlement are in her name alone.  Respondent argues that paragraph 10 is not applicable in classifying property as marital or non-marital.  Rather, it only controls as to the distribution of property.

Pursuant to section 503(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(b))(West 1996), property acquired during the marriage is presumed to be marital property unless it is shown by clear and convincing evidence that the property falls within one of the statutory exceptions listed in section 503(a) of the Act.  750 ILCS 5/503(a)(West 1996); 
In re Marriage of Blunda
, 299 Ill. App. 3d 855, 862 (1998).  Under section 503(a)(4) of the Act, property acquired subsequent to the marriage is not marital property if such property is excluded by a "valid agreement of the parties."  750 ILCS 5/503(a)(4)(West 1996).  Antenuptial agreements fall within the terms of section 503(a)(4).  See 
In re Marriage of Jelinek
, 244 Ill. App. 3d 496, 501 (1993).

Paragraph 10 of the antenuptial agreement provides:

"The parties further covenant and agree that upon the termination of the marriage by divorce or dissolution, all appreciation of the marital property acquired during the course of the marriage of the parties shall be owned in proportion to their initial contribution unless otherwise agreed in writing and executed by both parties.  The parties further agree that all assets or property acquired after the marriage not held in joint tenancy or tenancy in common shall, upon dissolutin [
sic
] or divorce, be distributed to that party in whose name the asset or property is held."

While we agree that paragraph 10 of the antenuptial agreement may control the instant issue, petitioner has presented us with no evidence, other than her own testimony, that the proceeds from the personal injury settlement and the life insurance policy were in her name alone.  The trial court classified these two assets as marital property.  Absent an abuse of discretion, we must uphold the trial court’s findings.  
DeRossett
, 173 Ill. 2d at 422.  We find no abuse of discretion here.

Finally, we determine whether petitioner dissipated these marital assets.  Petitioner maintains that the funds from the life insurance policy and the personal injury settlement were not improperly spent.  She notes that at the time she received these funds in 1996, the trial court had yet to enter a temporary support order.  Petitioner further claims that she only used the funds to make the mortgage payment, to pay the utilities, and to provide transportation.  Respondent contends that the evidence that petitioner presented as to how she used these assets, which consisted solely of her testimony, was not sufficient to support her contention that she did not dissipate those assets.

Under section 503(d)(2) of the Act (750 ILCS 5/503(d)(2) (West 1996)), in determining how to distribute the marital property, the court is required to consider the dissipation by each party of marital or non-marital property.  Dissipation refers to the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown.  
In re Marriage of O’Neill
, 138 Ill. 2d 487, 497 (1990).

The spouse charged with dissipation has the burden of proving by clear and convincing evidence, how the marital funds were spent.  
In re Marriage of Charles
, 284 Ill. App. 3d 339, 343 (1996).  General and vague statements about such funds are insufficient to defeat a charge of dissipation.  
In re Marriage of Hahin
, 266 Ill. App. 3d 168, 171 (1994).  Based on the credibility of the witnesses, the trial court determines whether the funds were spent for legitimate family expenses which were necessary and appropriate.  
Charles
, 284 Ill. App. 3d at 343.  The trial court’s finding regarding dissipation will not be reversed absent an abuse of discretion.  
In re Marriage of Petrovich
, 154 Ill. App. 3d 881, 886 (1987).

In this case, the trial court specifically determined that petitioner failed to prove by clear and convincing evidence that she did not dissipate the proceeds from her personal injury settlement and from the life insurance policy.  The court further noted that petitioner only offered vague explanations as to how she spent these proceeds and that her credibility was lacking.  Indeed, a review of the record supports the trial court’s findings.  Except for vague references by petitioner that she used the proceeds to pay her utility and credit card bills, there is no evidence as to how she spent the money.  We find that petitioner has failed to prove by clear and convincing evidence how she spent these funds.  Thus, we agree with the trial court that petitioner dissipated the proceeds from the life insurance policy and the personal injury settlement.

[The preceding material is nonpublishable under Supreme Court Rule 23.]

III. Pension

[The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).]

Next, petitioner asks us to find whether the trial court properly awarded respondent’s IBEW pension solely to him.  Petitioner argues that the antenuptial agreement could not serve to waive her right to respondent’s IBEW pension because the pension did not exist at the time that the parties executed the antenuptial agreement.  Petitioner also claims even if this court finds that the antenuptial agreement served as a waiver of her rights to respondent’s pension, the waiver is invalid under federal law.

Respondent points out that the trial court awarded him the IBEW pension under two theories.  First, the court awarded him the pension under the validly executed antenuptial agreement.  Second, the court awarded him the pension as an equitable distribution pursuant to section 503 of the Act.  750 ILCS 5/503 (West 1996).  Respondent argues that federal law is inapplicable.  

As mentioned, at the time that the parties were married in 1983, respondent was employed as a truck driver.  In 1987, respondent became an electrician and joined Local Union 134 of the IBEW, and became eligible to participate in the union’s pension plan.  In awarding the entire IBEW pension to respondent, the trial court commented:

"[Respondent’s] pension through the Illinois Brotherhood of Electrical Workers will be awarded to him both as a result of the valid antenuptial agreement and additionally as an equitable distribution of property under the Illinois Marriage and Dissolution of Marriage Act."

We agree with the trial court that both under the terms of the antenuptial agreement and under section 503 of the Act, respondent is solely entitled to his IBEW pension.

Paragraph 10 of the antenuptial agreement provides, in pertinent part:

"The parties further agree that all assets or property acquired after the marriage not held in joint tenancy or tenancy in common shall, upon dissolution or divorce, be distributed to that party in whose name the asset or property is held."

The parties do not dispute that the pension is held solely in respondent’s name.  As a result, we find that the prospective nature of the language in the antenuptial agreement served to waive any right petitioner may have had to respondent’s IBEW pension.  See 
In re Estate of Hopkins
, 214 Ill. App. 3d 427, 433 (1991).

We also agree that under section 503 of the Act (750 ILCS 5/503 (West 1996)), respondent is entitled to the entire IBEW pension.  A trial court’s distribution of marital assets will not be disturbed unless the court clearly abused its discretion.  
In re Marriage of DeRossett
, 173 Ill. 2d 416, 422 (1996).

In this case, under the terms of the judgment of dissolution of marriage, respondent is required to pay child support of $130  per week until June 15, 2011; any personal debts; half of the minor child’s day care and educational expenses; half of the minor’s "ordinary" health care expenses; and all of the minor’s "extraordinary" health care expenses.  In addition, respondent is required to maintain his medical insurance for the minor until she reaches age 22 or completes post-secondary education and to maintain a minimum $200,000 in life insurance policies naming the minor as the beneficiary.  Petitioner, on the other hand, was required to pay any personal debts; half of minor’s day care and educational expenses; and half of the minor’s "ordinary" medical expenses.

In addition, exclusive of personal property, the trial court awarded petitioner the 1995 Ford Explorer automobile and the 1995 Chevrolet S-10 Pickup Truck.  Conversely,  the trial court awarded respondent his IBEW pension and the 1994 Ford Explorer automobile.  In addition, the marital home was to be sold, with the parties splitting the proceeds that remain after the mortgages and the marital debts are repaid.  We cannot say the trial court clearly abused its discretion.

We need not address petitioner’s argument that pursuant to the Retirement Equity Act (29 U.S.C. §1055 (1988)), she could not waive her rights to respondent’s pension because we find that the Retirement Equity Act is not applicable to these proceedings.  One of the purposes Congress wished to address in promulgating the Retirement Equity Act was to afford better protection for women dependent on their husbands’ earnings, by requiring pension plans to provide automatic survivor benefits.  See 29 U.S.C. §1055 (1988); 
In re Marriage of Norfleet
, 243 Ill. App. 3d 925, 929 (1993).  We read the Retirement Equity Act as applying only in those cases in which the covered spouse dies.  Petitioner has not cited any case that holds otherwise.  Since respondent did not die before the dissolution proceedings were final, the Retirement Equity Act is not applicable.  Thus, we reject petitioner’s contention that she is entitled to a portion of respondent’s IBEW pension under the Retirement Equity Act.

[The preceding material is nonpublishable under Supreme Court Rule 23.]
 

IV. Child Support

 We now determine the amount, if any, that respondent overpaid in child support.  The trial court calculated that respondent overpaid by $5,490.69.  Petitioner contests that amount, asserting that respondent overpaid child support only in the amount of $2,582.03.  Respondent, on the other hand, claims that he overpaid child support in the amount of $3,239.56.  In order to resolve this issue, we summarize the procedural history of the case in relation to child support.

On February 7, 1996, petitioner filed a petition for temporary custody, support, and other relief.  On September 5, 1996, the trial court issued an order setting child support at the statutory 20% of respondent’s net monthly income of $3,437.85, or $687.57 per month.  750 ILCS 5/505(a)(1)(West 1996).  The court also awarded petitioner $1,292.43 per month as additional child support to pay the mortgages on the Bartlett, Illinois, home.  Thus, the court ordered respondent to pay child support in the amount of $1,980 per month, retroactive to September 3, 1996.

On September 16, 1996, respondent filed a motion for reconsideration of the trial court’s September 5, 1996, order.  In his motion, respondent complained that the money awarded for the payment of the mortgages on the marital home was in the nature of maintenance.  Respondent also claimed that by classifying the money for the mortgages as child support the court deprived him of certain tax benefits he would receive had the court labeled the funds as maintenance.  In any event, respondent contended that the trial court’s award of $1,980 per month in child support was excessive because it amounted to 58% of his net monthly income. 

Also on September 16, 1996, the trial court entered a support order requiring respondent to pay $461 per week in child support.  The start date of the support was retroactive to September 3, 1996.

On September 26, 1996, respondent filed a motion to modify the temporary order of support.  Respondent prayed for a reduction in the amount of child support due to an injury he allegedly sustained at work.  In the motion, respondent averred that his only source of income was worker’s compensation benefits in the amount of $710 per week.

On November 20, 1996, the trial court entered an agreed order "pursuant to notice on defendant’s motion to modify support" which set a hearing for "all pending pleadings" on January 7, 1997.  The hearing was subsequently continued on several occasions until the trial began on August 14, 1997. 

On December 3, 1997, the trial court entered the order of dissolution.  In that order, the trial court calculated that respondent should have paid the following amounts in child support:

"From September 26, 1996, through January 6, 1997, the sum of $142.50 per week;

From January 6, 1997, through July 1, 1997, the sum of $198.40 per week;

From July 1, 1997, through the date of Judgment of Dissolution of Marriage [December 3, 1997], the sum of $200.00 per week, or a total of $10,042.50."

Petitioner’s first contention of error is that the trial court committed an arithmetical error when the court determined that the amount of child support that respondent was required to pay between September 26, 1996, and December 3, 1997, was $10,042.50.  Respondent concedes such error, and we agree.

In calculating the amount of child support due, we have counted the first day of each period but excluded the last day of each period.  A proper calculation shows that respondent should have paid the following amount in child support between September 26, 1996, and December 3, 1997:

From September 26, 1996, to January 6, 1997, the sum of $142.50 per week for 14 4/7 weeks, or $2076.43;

From January 6, 1997, to July 1, 1997, the sum of $198.40 per week for 25 1/7 weeks, or $4988.34;

From July 1, 1997, to the date of Judgment of Dissolution of Marriage (December 3, 1997), the sum of $200 per week for 22 1/7 weeks, or $4428.57
.

Therefore, respondent should have paid a total of $11,493.34
 in child support during this period.

Petitioner also claims that the trial court did not take into consideration the amount of child support due between September 3, 1996, and September 26, 1996 (the date respondent filed his motion to modify the temporary order of support).  According to petitioner, respondent was liable for child support in the amount of $461 per week during this period.  Since the trial court did not consider this amount in calculating the overpayment of child support, the respondent’s overpayment should be reduced accordingly.

Respondent concedes that he should have paid $461 per week in child support beginning September 3, 1996.  However, respondent argues that this obligation ceased on September 16, 1996 (the date that respondent filed his motion to reconsider the support obligation), not September 26, 1996.  

Past-due child support payments that accrue prior to the filing of a petition for modification constitute a vested and unmodifiable right.  
In re Marriage of Ingram
, 259 Ill. App. 3d 685, 691 (1994); 
In re Marriage of Macino
, 236 Ill. App. 3d 886, 890 (1992); see 750 ILCS 5/510(a) (West 1996).  Therefore, respondent was obligated to pay $461 per week in child support until September 26, 1996, the date he filed his motion for modification.  Indeed, on the day that the trial judge entered the judgment of dissolution, he commented that "there was no change [in child support] until September 26th."  Thus, during the period from September 3, 1996, to September 26, 1996, respondent should have paid $461 per week for 3 2/7 weeks, or $1,514.71
.

In sum, we conclude that from September 3, 1996, until December 3, 1997, respondent was required to pay $13,008.05 in child support.  According to the record, respondent actually paid $15,533.19 during the period in question.  Therefore, respondent is entitled to a credit of $2,525.14 for the overpayment of child support.

Petitioner has raised three child-support-related arguments, which we now address.  First, petitioner argues that the trial court improperly averaged respondent’s work history over a period of 10 years to arrive at a child support obligation based on a 32- hour work week.  According to petitioner, the resultant $130 per week in child support that the court ordered respondent to pay is below the minimum 20% of the payor’s net income as required by statute.  Respondent maintains that the trial court did not abuse its discretion in setting child support.

The findings of a trial court as to income and the awarding of child support are within the discretion of the trial court and will not be disturbed on review absent an abuse of discretion.  
In re Marriage of Freesen
, 275 Ill. App. 3d 97, 103 (1995).  In 
Freesen
, the court determined that it was proper to use an income-averaging approach in determining the amount of a noncustodial parent’s child support obligation where the noncustodial parent’s income varies significantly from year to year.  
Freesen
, 275 Ill. App. 3d at 104.

In this case, respondent presented evidence that he was an hourly employee and that the hours he worked varied significantly from year to year.  Over a 10-year period, the number of hours respondent worked each year varied from a low of 815 hours in 1989 to a high of 2,146½ hours in 1995.  Respondent explained that these significant fluctuations are due to the seasonal nature of the construction business.  We realize that averaging the number of hours worked each week is different from income-averaging based on a yearly income.  However, since, in this case, respondent’s salary was based on the number of hours per week that he worked, we find the two situations analogous.

Based on this evidence, we cannot say that the trial court abused its discretion in using an average of the number of hours that respondent worked to determine his child support obligation.  In addition, we note that petitioner contends that the actual amount of child support awarded is below the statutory guidelines.  However, the trial court specifically found that the child support awarded amounted to slightly over 20% of respondent’s net income 

Petitioner’s reliance on 
In re Marriage of Schroeder
, 215 Ill. App. 3d 156 (1991), 
is misplaced.  In 
Schroeder
, the court determined that the income-averaging approach was improper because the payor’s income did not vary significantly from year to year.

Second, petitioner complains that the trial court should not have awarded respondent the income tax dependency exemption for their minor child because she contributes the majority of the child’s support.  Respondent claims that, since petitioner was unemployed at the time the dissolution judgment was entered, he was the only parent providing the parties’ minor child with support.  Thus, he was properly awarded the dependency tax exemption.

The decision as to which parent to award the income tax dependency exemption will not be reversed absent an abuse of discretion.  
In re Marriage of Fowler
, 197 Ill. App. 3d 95, 100 (1990).  The exemption should be awarded to the parent who will contribute the majority of the child’s support.  
In re Marriage of Clabault
, 249 Ill. App. 3d 641, 650 (1993); 
In re Marriage of Rogliano
, 198 Ill. App. 3d 404, 415 (1990).  

As respondent points out, at the time that the dissolution judgment was entered, he was the only parent employed.  We note that, except for bare assertions, petitioner has not provided us with any evidence that respondent has not contributed a majority of the minor child’s support.  As a result, we cannot conclude that the trial court abused its discretion in granting respondent the income tax dependency exemption.

Third, petitioner complains that the trial court erred in awarding respondent credit for the marital property she dissipated and the child support respondent overpaid by temporarily reducing respondent’s child support obligation by $30 per week.  Petitioner claims that the trial court did not consider the statutory guidelines provided in section 505(a)(2) of the Act.  750 ILCS 5/505(a)(2)(West 1996).  Respondent replies that, although the trial court did not consider the factors listed in section 505(a)(2) of the Act, the court is permitted to consider nonlisted factors.  In this case, the court considered the fact that he overpaid child support and that petitioner dissipated marital assets.

Section 505(a)(1) of the Act provides that, in the case of one child, the minimum amount of child support that the trial court shall order is 20% of the noncustodial parent’s net income.  750 ILCS 5/505(a)(1)(West 1996).  The trial court may deviate from the guidelines listed in section 505(a)(1) only if it:

"consider[s] the best interests of the child in light of evidence including but not limited to one or more of the following relevant factors:

(a) the financial resources and needs of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non-custodial parent.

If the court deviates from the guidelines, the court’s finding shall state the amount of support that would have been required under the guidelines, if determinable.  The court shall include the reason or reasons for the variance from the guidelines."  750 ILCS 5/505(a)(2) (West 1996).

When determining whether to deviate from the statutory guidelines, a trial court’s consideration of the factors set forth in section 505(a)(2) of the Act is mandatory, not discretionary.  
In re Marriage of Singleteary
, 293 Ill. App. 3d 25, 36 (1997).  In addition, the trial court must make express findings when it orders child support that is below the statutory minimum.  
Singleteary
, 293 Ill. App. 3d at 36.

In this case, the order setting child support granted respondent a credit of $30 per week for the dissipation of marital assets by petitioner and for the overpayment of child support by respondent.  However, the record is devoid of any indication that the trial court considered the factors listed in section 505(a)(2) of the Act.  While we agree that respondent is entitled to a credit for the dissipation of marital property and for the overpayment of child support, we hold that the trial court erred in reducing the child support award based solely on its findings that petitioner dissipated marital assets and that respondent overpaid child support.

On remand, the trial court shall determine the most equitable method to reimburse respondent for petitioner’s dissipation of the marital property and his overpayment of child support.  We have been unable to find any authority that would permit the trial court to reduce a payor spouse’s child support obligation on the basis that the payee spouse improperly dissipated marital property.  In addition, based on the facts in this case, we find that the dissipation of marital property by petitioner does not fall within any of the factors permitting a deviation from the statutory child support guidelines.  750 ILCS 5/505(a)(2)(West 1996).  Therefore, the trial court shall not reduce respondent’s child support obligation on the basis that petitioner dissipated marital property.

While the court may, on remand, reduce respondent’s child support obligation based on his overpayment of child support, the court must ensure that the reduction does not work a deprivation on the minor child.  See 
In re Marriage of Tollison
, 208 Ill. App. 3d 17, 20-21 (1991).
  In addition, in awarding respondent credit for the overpayment of child support, the trial court shall use the figure calculated by this court.

CONCLUSION

In conclusion, we hold that, pursuant to the antenuptial agreement, petitioner was not entitled to maintenance.  Further, we conclude that petitioner dissipated the proceeds she received from the life insurance policy and from the personal injury settlement.  We also determine that under the terms of the antenuptial agreement respondent is entitled to sole ownership of his IBEW pension.  We remand this cause to the trial court to determine the best method to determine how to award respondent compensation for the dissipation of marital property by petitioner and for his overpayment of child support.

The judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded with directions.

Affirmed in part and reversed in part; cause remanded with directions.

GEIGER and THOMAS, JJ., concur.